UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
KIMIE MIYAMOTO,

              Plaintiff,

  -against-

BANK OF AMERICA, N.A., MR.
COOPER f/k/a NATIONSTAR
MORTGAGE, LLC d/b/a CHAMPION
MORTGAGE, REVERSE MORTGAGE
SOLUTIONS, INC., and
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT

              Defendants.
------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 19-CV-445 (FB) (ST)

*Appearances*:
*For the Plaintiff:*
CHARLES A. HIGGS
450 Lexington Avenue, 4th Floor
New York, New York 10010

*For Defendant Mr. Cooper f/k/a*
*Nationstar Mortgage, LLC d/b/a*
*Champion Mortgage*
MICHAEL T. MADAIO
Sandelands Eyet LLP
112 West 34th Street, 18th Floor
New York, New York 10120

**BLOCK, Senior District Judge:**

    Kimie Miyamoto lost her home in foreclosure. The question in this diversity case is whether that foreclosure occurred because of the actions or omissions of Mr. Cooper f/k/a Nationstar Mortgage, LLC d/b/a Champion

Mortgage ("Champion").[1]  Arguing that it did not, Champion moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the motion is granted in part and denied in part.

## I

The following facts are taken from the allegations of the complaint.  For purposes of this motion, they are accepted as true, with all inferences drawn in the plaintiff's favor.  *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

In 2000, Miyamoto and her husband obtained a loan of $110,000 from Lincoln Equities Credit Corp. ("Lincoln").  The loan was secured by a mortgage ("the Lincoln Mortgage") on Miyamoto's home in Forest Hills, Queens.  Within a few months, Lincoln filed a state-court foreclosure action alleging that Miyamoto had defaulted on the loan.

In 2009, Miyamoto obtained a "reverse mortgage" from Bank of America, N.A. ("BOA").  As is typical of such arrangements, BOA advanced Miyamoto a loan (in this case, up to $915,000) without any monthly repayment obligation.  Instead, BOA expected to be repaid from the proceeds of a sale of the property, or by taking title to the property upon Miyamoto's death.

---

[1] A copy of the complaint was served on "Champion Mortgage, LLC." Although it may have been a separate entity at some point, it has been a division of Nationstar Mortgage, LLC, since 2007.  Miyamoto does not dispute that the entity named in the complaint is the proper defendant.

BOA was aware of the Lincoln Mortgage and, in preparing to close the reverse mortgage, received what purported to be a copy of a satisfaction of the Lincoln Mortgage. It is not clear from the complaint or the parties' submissions, but apparently the Lincoln Mortgage was not, in fact, properly satisfied during the reverse mortgage closing.

As a result, the foreclosure proceeding continued. The state court entered a judgment of foreclosure in 2014 and the property was sold at auction in June 2016; Miyamoto was evicted in 2018.

BOA assigned the note and mortgage to Champion in October 2012. In May 2016, Champion reconveyed the note and mortgage to BOA, which retained Reverse Mortgage Solutions, Inc. ("RMS"), to service the loan. Because the foreclosure action predated the reverse mortgage by more than nine years, BOA, Champion and RMS were not named as defendants in that action.

The complaint alleges that, despite knowledge of the foreclosure proceeding, "Defendants assured Plaintiff both in writing and verbally that Plaintiff's Reverse Mortgage was in good standing and that she could remain at her home." Compl. ¶ 50. The complaint does not distinguish among the three defendants or provide any details about the alleged reassurances.

## II

Miyamoto's allegations, if proven, may well be sufficient to establish

BOA's liability for the foreclosure. *Cf. Podesta v. Assumable Homes Dev. II Corp.*, 31 N.Y.S.2d 74, 77 (2d Dep't 2016) (title agent liable for incorrect property description in partial mortgage release). Indeed, she concedes that "Bank of America is the Defendant that is likely most responsible for the damages to Plaintiff." Pl.'s Mem. of Law 4.

But this is Champion's motion to dismiss, not BOA's. Miyamoto's theory of Champion's liability is harder to discern, but it appears to be based on misrepresentations and omissions during the time Champion serviced the reverse mortgage. Miyamoto argues that she was harmed, not only by BOA's failure to obtain a proper satisfaction of the Lincoln Mortgage, but also by Champion's "continued misrepresentations" that "everything was fine" despite knowledge of the foreclosure proceeding. *Id.* at 2. She further argues Champion "took no steps to correct the issues with the loan, took no steps to mitigate damages to the Plaintiff, or to alert Plaintiff to the issues with the Reverse Mortgage." *Id.* at 3.

That theory of liability is asserted in six of the eight causes of action in the complaint.[2] The Court addresses each, though not in the order they are presented in the complaint.

---

[2] Miyamoto's first cause of action alleges violations of the Real Estate Settlement Procedures Act by RMS only. Her eighth cause of action seeks declaratory and injunctive relief requiring "any of the Defendants with an equitable right of redemption" to exercise that right, Compl. 24; Having no current interest in the reverse mortgage, Champion has no such right.

4

**A.     Breach of Contract**

Champion argues that is was not in contractual privity with Miyamoto because it merely "serviced" BOA's loan.  The complaint, however, alleges an assignment of the reverse mortgage.  At this stage, the Court must accept that allegation as true.

Even assuming contractual privity, the complaint "must identify the specific provision of the contract that was breached as a result of the acts at issue."  *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003).  Miyamoto has not identified a specific provision or even attached a copy of the reverse mortgage agreement to the complaint.  Thus, she has failed to allege that Champion was under any contractual duty to apprise her of or correct any problems with the closing.

**B.     Fraud**

Federal Rule of Civil Procedure 9(b) requires a plaintiff to state allegations of fraud to "with particularity."  That means the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks omitted).

Miyamoto's alleges that "Defendants . . . knowingly misrepresented . . . the

status of her loan," Compl. ¶ 2, and that "Defendants . . . assured Plaintiff both in writing and verbally that Plaintiff's Reverse Mortgage was in good standing," *id.* ¶ 50. Those allegations do not identify any specific statements by Champion or explain how they were false. Any statements regarding the status or good standing of the loan were not false because the problem was with the Lincoln Mortgage, not the reverse mortgage.

Miyamoto alleges that "Bank of America, its successor and assigns, have continually represented to Plaintiff that the Reverse Mortgage is the first lien on the Property." *Id.* ¶ 43. That allegation provides some particularly—assuming that Champion is one of BOA's assigns and knew that the Lincoln Mortgage had not been satisfied—yet it does not specify the timing, content or format of the statements attributable to Champion.

In sum, Miyamoto's allegations of fraud fall short of the standard required by Rule 9(b).

## C. Intentional Infliction of Emotional Distress

The elements of intentional infliction of emotional distress are: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). The conduct must be "intentionally

6

directed at the plaintiff and lack any reasonable justification." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985).

Champion's actions probably do not qualify as "extreme and outrageous." *See Howell*, 81 N.Y.2d at 122 ("[O]f the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous."). But even if they did, there is no plausible inference that they were motivated by a specific intent to cause Miyamoto emotional distress.

Moreover, the statute of limitations for intentional infliction of emotional distress is one year. *See Jemison v. Crichlow*, 531 N.Y.S.2d 919, 922 (2d Dep't 1988) (citing N.Y.C.P.L.R. § 215(3)). The complaint was filed almost three years after Champion reconveyed the reverse mortgage to BOA.

## D.   Unjust Enrichment

Miyamoto alleges that all defendants, including Champion, were unjustly enriched "because Plaintiff paid taxes and insurance on the Property pursuant to the terms of the Reverse Mortgage for purposes of benefiting the Defendants by protecting the Defendants' lien interest in the Property." Compl. ¶ 114. Those payments did not enrich Champion, however, because they were remitted to others and would have been required in any event as long as Miyamoto owned the

property.[3]

Nor did Miyamoto's tax and insurance payments protect Champion's lien during the time it held the reverse mortgage. The lien was impaired from its inception by the improperly satisfied Lincoln Mortgage, and was eventually foreclosed despite Miyamoto's compliance with her obligations.

E.   **Negligence and Negligent Infliction of Emotional Distress**

The cornerstone of a negligence cause of action is a duty of care, and Miyamoto concedes that "a mortgage servicer generally does not owe a duty of care to a borrower." Pl.'s Mem. of Law 1. Neither party mentions the duties of a mortgage *holder*—as Champion was alleged to be—but it is "well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties." *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d. 222, 236 (E.D.N.Y. 2013).

Thus, Miyamoto does not premise her negligence claim on a general tort duty. Instead, she argues that Champion voluntarily assumed a duty of care to her.

The assumption-of-duty doctrine has a venerable pedigree in New York. In 1922, Judge Cardozo said, "It is ancient learning that one who assumes to act, even

---

[3]Tax and insurance payments made by Miyamoto after the foreclosure sale are more problematic, but the benefit would have inured to the new owner. In any event, Champion's involvement with the reverse mortgage ended prior to the sale.

8

though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 233 N.Y. 236 (1922). He later explained that "[t]he query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good." *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 167 (1928). Seventy years later, the Second Circuit summarized New York's formulation of the doctrine: "Assumed duties arise only where (1) the failure to exercise due care increases the risk of harm to the plaintiff or (2) the harm is suffered because of the plaintiff's reliance on the undertaking." *Tavarez v. Lelakis*, 143 F.3d 744, 747 (2d Cir. 1998) (citing *Heard v. N.Y.C.*, 82 N.Y.2d 66, 72 (1993), and *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 522 (1980)). Moreover, while the existence of a duty is usually a question of law, "where there is evidence that a defendant's continued conduct either placed a plaintiff in a more vulnerable position or caused the plaintiff to detrimentally rely on the defendant, courts have found the question of duty to involve triable issues of fact." *Kloner v. United States*, 196 F. Supp. 3d 375, 387 (E.D.N.Y. 2016).

    The risk of foreclosure began when Miyamoto (allegedly) defaulted on the Lincoln Mortgage. Champion and the other defendants may not have assuaged that risk, but nor did they do anything to increase it. Acknowledging this, Miyamoto argues that her "harm and damages were largely caused because of [her]

9

*reliance* on the continued misrepresentations by Champion Mortgage and the other Defendants in this action." Pl's. Mem. of Law 2 (emphasis added). If true, that is a valid application of the assumption-of-duty doctrine.

To be sure, Miyamoto's theory is not airtight. First, she must establish that Champion, in fact, voluntarily undertook to inform her of the status of the *Lincoln Mortgage*. As noted, the focus of the complaint is on representations about the status of the reverse mortgage, which was not the basis of foreclosure that led to the loss of her property. Nevertheless, Miyamoto does allege that Champion "continually represented to [her] that the Reverse Mortgage is the first lien on the Property." *Id.* ¶ 43. While that allegation lacks the particularity required for a fraud claim under Rule 9(b), negligence claims "fall under Rule 8(a), and thus require only a 'short and plain statement of the claim.'" *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 64 (2d Cir 2012).

Second, Miyamoto must establish that she reasonably and detrimentally relied on Champion's representations. That will not be an easy task because she was obviously aware of the foreclosure action, which had been pending for over a decade when Champion took over the reverse mortgage. Yet closing the reverse mortgage was supposed to satisfy the Lincoln Mortgage and terminate the foreclosure proceeding. The Court cannot say, based solely on the allegations of the complaint, that Miyamoto did not reasonably rely on statements allegedly made

10

by Champion if they confirmed her belief that the reverse mortgage had negated the risk of losing her home.

As a final matter, the complaint contains a standalone cause of action for negligent infliction of emotional distress. That cause of action generally requires a risk of physical injury to the plaintiff. *See Mortise v. United States,* 102 F.3d 693, 696 (2d Cir. 1996) (citing *Bovsun v. Sanperi*, 61 N.Y.2d 219, 230-31 (1984), and *Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 504 (1983)). There are exceptions, but in *Pirrelli v. OCWEN Loan Serv., LLC*, 12 N.Y.S.3d 110, 116 (2d Dep't 2015), the Second Department held that a loan servicer and its attorneys were not liable for negligent infliction of emotional distress in connection with a mortgage refinancing. The factual similarities between *Pirrelli* and this case lead the Court to conclude that the New York Court of Appeals would not recognize a cause of action for negligent infliction of emotional distress in this context. *See Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) ("Where there is "no decision by the state's highest court then federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State." (internal quotation marks and alterations omitted)).

### III

For the foregoing reasons, Champion's motion to dismiss is granted in part and denied in part. Miyamoto's cause of action for negligence shall proceed.

The remaining causes of action (breach of contract, fraud, intentional infliction of emotional distress, unjust enrichment, and negligent infliction of emotional distress) are dismissed with prejudice as to Champion only.

**SO ORDERED.**

               _/S/ Frederic Block_____
               FREDERIC BLOCK
               Senior United States District Judge

Brooklyn, New York
September _17_, 2020