UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
KIMIE MIYAMOTO,

               Plaintiff,

      -against-

BANK OF AMERICA, N.A., MR.
COOPER f/k/a NATIONSTAR
MORTGAGE, LLC d/b/a CHAMPION
MORTGAGE, REVERSE MORTGAGE
SOLUTIONS, INC., and
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT
               Defendants.
-----------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 2:19-CV-445 (FB) (ST)

*Appearances*:
*For the Plaintiff*:
CHARLES A. HIGGS
Law Office of Charles A. Higgs
44 S. Broadway, Suite 100
White Plains, NY 10601

*For the Defendants*:
SHAN P. MASSAND
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104

**BLOCK, Senior District Judge:**

     Plaintiff, Kimie Miyamoto ("Plaintiff"), sues Bank of America, N.A.

("BANA") in diversity for harm she suffered in connection with the foreclosure of

her home. BANA moves to dismiss under Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim on which relief can be granted. For the following

reasons, the motion is granted in part and denied in part.

1

**I**

The following facts are taken from allegations in the complaint. For the purposes of this motion, they are accepted as true, with all inferences drawn in the plaintiff's favor. *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

In 2000, Miyamoto took out a $110,000 loan from Lincoln Equities Credit Corp. ("Lincoln") secured by a mortgage on Miyamoto's house ("the Lincoln Mortgage") in Forest Hills, Queens. Lincoln began foreclosure proceedings on the mortgage later that year after Miyamoto defaulted.

In 2009, Miyamoto obtained a home equity conversion mortgage (also known as a "reverse mortgage") from BANA, which was secured by the same house. Under the terms, BANA was to advance a loan up of up to $915,000 in exchange for an equity interest in the property. BANA closed the reverse mortgage with knowledge of the earlier Lincoln Mortgage, relying on an un-notarized document that purported to be a copy of the Lincoln Mortgage's satisfaction. BANA assigned its note and reverse mortgage to Mr. Cooper f/k/a Nationstar Mortgage d/b/a Champion Mortgage ("Champion") in 2012, who reconveyed it to BANA in 2016.

The Lincoln Mortgage had never been satisfied, however, and as a result, the Lincoln Mortgage was foreclosed in 2014 and the property sold at a foreclosure sale in June 2016. Plaintiff was evicted in 2018. Ensuing litigation in state court

2

twice found BANA had acted unreasonably in closing the reverse mortgage in reliance on the un-notarized copy of the Lincoln mortgage satisfaction.

The state-court litigation determined that BANA's lien was inferior to the Lincoln Mortgage and granted BANA the option to either redeem its mortgage or relinquish any interest in the property. *71-21 Loubet, LLC v. Bank of Am., N.A.*, No. 2020-01313, 2022 WL 3640772, at *1-2 (App. Div. 2d Dep't Aug. 24, 2022). A separate state-court dispute arose over whether BANA or Plaintiff was entitled to surplus funds left over from the 2016 foreclosure sale, which to the Court's knowledge is still pending. *See* Report of Referee as to Distribution of Surplus Monies, *Dorvilier v. Miyamoto*, Index No 718955/2021 (NY Sup. Ct. Queens County Apr. 6, 2022).

## II

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556,).

In her complaint, Plaintiff claims that BANA is liable for damages she suffered from foreclosure on the Lincoln Mortgage. Even though Plaintiff likely knew of the pre-existing foreclosure proceedings against the property, she claims that BANA convinced her that the reverse mortgage protected her from the foreclosure: "Defendants assured Plaintiff both in writing and verbally that Plaintiff's Reverse Mortgage was in good standing and that she could remain at her home." Compl. ¶ 50. The complaint does not provide any details about these alleged reassurances. Plaintiff also alleges BANA failed to properly satisfy the Lincoln Mortgage before closing the reverse mortgage, failed to fix this issue after closing, and failed to notify her of this problem or mitigate her damages.

Presently before the court are BANA's challenges to Plaintiff's claims for breach of contract, intentional infliction of emotional distress, negligent infliction of emotion distress, and negligence.[1] This court previously granted in part a motion to dismiss identical claims against Defendant Champion, preserving only

---

[1] Although the complaint also alleges fraud and unjust enrichment, Plaintiff does not contest BANA's argument that they are not viable claims. The Court therefore dismisses them as abandoned. *See Rohn Padmore, Inc. v. LC Play Inc.*, 679 F.Supp.2d 454, 459 (S.D.N.Y. 2010) ("Where one party fails to respond to an opposing party's argument that its claim must be dismissed, courts may exercise their discretion and deem the claim abandoned." (citation omitted)).

Plaintiff's negligence claim. *Miyamoto v. Bank of Am., N.A.*, No. 19-CV-445, 2020 WL 5577730, at *4 (E.D.N.Y. Sept. 17, 2020). For the reasons described below, the Court reaches the same result here.

### A.     Breach of Contract

Plaintiff claims BANA breached the reverse mortgage contract (1) at the moment of formation by closing it without ensuring that BANA "retained first mortgage lien priority," and (2) afterward by misrepresenting the status of the reverse mortgage and failing to redeem the property. Compl. ¶ 81-83. BANA argues this claim is not pleaded with sufficient particularity and is untimely. In its opposition, Plaintiff defends against BANA's particularity argument but seems to ignore the issue of timelines.

Under New York law, contract claims must be brought within six years of the alleged breach. N.Y. C.P.L.R. § 213(2). Because the contract was closed in 2009, ten years before Plaintiff sued, Plaintiff's breach claim is untimely to the extent it concerns BANA's closing the reverse mortgage. Plaintiff's allegations about BANA's misrepresentations and failure to redeem at later, unspecified dates are not necessarily untimely, as the conduct at issue occurred sometime after the

contract was closed. However, they too must be dismissed because Plaintiff has not pleaded them with sufficient particularity.

Under New York law, breach claims must identify "the specific provisions of the contract upon which liability is predicated." *Timberg v. Toombs*, No. 20-CV-6060, 2022 WL 954739, at *10 (E.D.N.Y. Mar. 30, 2022) (citing *Negrete v. Citibank, N.A.*, 187 F.Supp.3d 454, 468 (S.D.N.Y. 2016)). The complaint fails to name provisions BANA allegedly breached, so her claim must be dismissed.

**B.     Intentional Infliction of Emotional Distress**

Under New York Law, claims for intentional infliction of emotional distress require "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56 (2016) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)). The bar for "outrageous" conduct is extremely high—qualifying acts must "go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Howell*, 27 N.Y.3d at 122).

BANA's conduct here—sending Plaintiff mortgage statements and improperly closing her reverse mortgage—plainly falls short of this standard. Plaintiff is correct to point out that a defendant's course of conduct as a whole can

be sufficiently outrageous even when their actions taken individually would not.
*See Rich v. Fox News Network, LLC*, 939 F.3d 112, 123 (2d Cir. 2019) ("under
New York law, the proper inquiry is not merely whether each individual act might
be outrageous . . . [but] whether those actions—under the totality of the
circumstances—amounted to a deliberate and malicious campaign") (citing
*Scollar v. City of New York*, 160 A.D.3d 140 (1st Dep't 2018)).

However, the conduct Plaintiff alleges falls far short of the continuing
harassment that would satisfy this standard. *Rich*, for example, concerned a
"deliberate and malicious campaign of harassment" and "emotional torture." *Id.* at
122-23. This far exceeds BANA's alleged indiscretions, which included
neglectfully relying on incorrect paperwork in closing the reverse mortgage and
sending Plaintiff mortgage statements.

## C.    Negligent Infliction of Emotional Distress

Actions for negligent infliction of emotional distress generally require a
plaintiff to be put at risk of physical injury or be "caused to fear for their physical
safety." *Pirrelli v. OCWEN Loan Servicing, LLC*, 129 A.D.3d 689, 692 (2d Dep't
2015) (citing *Santana v. Leith*, 117 A.D.3d 711, 712 (2d Dep't 2014)).

Because there is no authority from the New York Court of Appeals on
whether a negligent infliction claim can stand on the basis of financial dealings,
this Court "must apply what [it] find[s] to be the state law after giving proper

7

regard to relevant rulings of other courts of the State." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994) (internal quotes and alterations omitted). The Appellate Division, Second Department affirmed the dismissal of a similar suit against a loan servicer related to a mortgage refinancing because the plaintiff failed to claim physical endangerment or fear. *Pirrelli*, 129 A.D.3d at 690-92. Here, Plaintiff states that she was hospitalized after being evicted, but does not explain how BANA's actions caused her injury or made her fear for her safety. Her negligent infliction claim therefore fails as a matter of law.

**D.     Negligence**

Plaintiff asserts that BANA acted negligently in causing her to believe that she was free from her obligations and foreclosure under the Lincoln Mortgage. Specifically, the complaint alleges that BANA "continually represented" that the reverse mortgage had priority over the Lincoln Mortgage and protected Plaintiff from the consequences of her default on the latter. Compl. ¶ 43. BANA argues this claim is time-barred and that it owed Plaintiff no duty that could give rise to liability for negligence.

Under New York law, mortgage lenders ordinarily owe no special duty of care to borrowers. *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F.Supp.2d 222, 236 (E.D.N.Y. 2013) ("It is well settled under New York Law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a

8

borrower any special duties."). Instead, Plaintiff argues that BANA voluntarily assumed a duty of care to her by making her vulnerable to eviction and inducing her to rely on BANA to her detriment. This Court previously found this theory cognizable with respect to Plaintiff's claims against Champion. *Miyamoto*, 2020 WL 5577730, at *3-4.

"Assumed duties arise only where (1) the failure to exercise due care increases the risk of harm to the plaintiff or (2) the harm is suffered because of the plaintiff's reliance on the undertaking." *Tavarez v. Lelakis*, 143 F.3d 744, 747 (2d Cir. 1998) (citing *Heard v. N.Y.C.*, 82 N.Y.2d 66, 72 (1993); *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 522 (1980)). The presence of an assumed duty is "fact-specific," and "triable issues of fact" exist where "a defendant's continued conduct either placed a plaintiff in a more vulnerable position or caused the plaintiff to detrimentally rely on the defendant." *Kloner v. United States*, 196 F.Supp.3d 375, 387 (E.D.N.Y. 2016) (citing *H.R. Moch Co.*, 247 N.Y. 160, 168 (1928); *Kievman v. Philip*, 84 A.D.3d 1031, 1033 (2d Dep't 2011)).

If this claim were to proceed, Plaintiff would need to prove she was evicted because she reasonably relied on BANA's representations about the priority status of its loan. This will be an uphill battle, as the complaint centers on communications from BANA concerning the reverse mortgage, not the Lincoln Mortgage that was foreclosed. However, reading the complaint in a light most

9

favorable to the plaintiff, it is not implausible that plaintiff, an elderly woman, reasonably believed the reverse mortgage extinguished the Lincoln Mortgage or otherwise protected her from foreclosure with respect to the Lincoln Mortgage.

BANA also argues that Plaintiff's negligence claim is time-barred. Plaintiff counters only by pointing out that the foreclosure sale and her eviction occurred within the three-year limitations period. Negligence claims must be brought within three years of the date liability arises. CPLR § 214(5). The "statutory period of limitation begins to run at the time the liability for the wrong arises, even if the injured party may be ignorant of the existence of the wrong or injury." *Kirkland v. Am. Title Ins. Co.*, 692 F.Supp. 153, 156 (E.D.N.Y. 1988) (limitations period ran from time title insurance company issued erroneous report, not from when plaintiffs discovered mistake or suffered injury).

BANA closed the reverse mortgage in 2009 and Plaintiff filed this lawsuit in 2019. Plaintiff's negligence claim is therefore untimely to the extent it is based on BANA's behavior leading up to closing.[2] However, allegations predicated on BANA's conduct after closing are not necessarily time-barred, as several of the

---

[2] Plaintiff does not assert that this aspect of her negligence claim is timely as a continuing wrong. It is problematical whether that is correct. *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039 (2d Cir. 1992) (explaining continuing wrong doctrine does not apply where "plaintiff has committed" to a contract with definitive obligations). In any event, failure to raise this argument once again constitutes a waiver. *See Rohn Padmore, Inc.*, 679 F.Supp.2d at 459.

10

correspondences Plaintiff alleges are undated or occurred within three years of filing this lawsuit. Plaintiff's cause of action for negligence therefore survives to the extent it is based on BANA's conduct within three years of filing this suit.

### E.    Declaratory and Injunctive Relief

In Count VIII, Plaintiff seeks a declaratory judgment and injunctive relief ordering BANA to redeem the property and granting her a lien on surplus funds from the 2016 foreclosure sale. The issue what relief Plaintiff is entitled to is premature and must await the outcome of her negligence claim.

### III

For the foregoing reasons, BANA's motion to dismiss is granted in part and denied in part. Plaintiff's cause of action for negligence may proceed. Her claims for breach of contract, fraud, unjust enrichment, and intentional and negligent infliction of emotional distress are dismissed with prejudice as to BANA. Her claim for declaratory for injunctive relief is dismissed without prejudice to renewal if the negligence claim survives.

**SO ORDERED.**

 _/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 12, 2022

11